IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**AESC INS. GROUP OF NEW MEXICO,**

   Plaintiff,

v.                                                                     No. 12-cv-0017 SMV/CG

**ASPEN INS. UK, LTD.,**

   Defendant.

### ORDER DENYING MOTION TO COMPEL ARBITRATION
### AND DENYING SUMMARY JUDGMENT

THIS MATTER is before the Court on Motion of Aspen Insurance UK Limited to Compel Arbitration or, in the Alternative, to Dismiss AESC's Third and Fourth Causes of Action (Each Sounding in Bad Faith), and AESC's Fifth and Sixth Causes of Action (Each Alleging Violations of the Unfair Trade Practices Act) [Doc. 12] and its accompanying Memorandum of Points and Authorities in Support [Doc. 13] (collectively, "Motion"), filed on February 29, 2012. Plaintiff responded in opposition on March 21, 2012. Response of AESC-NM Insurance Group of New Mexico to the [Motion] [Doc. 20] ("Response"). On April 11, 2012, Defendant replied.[1] Reply Memorandum of Points of Aspen Insurance UK, Limited In Support of its [Motion] [Doc. 28] ("Reply"). With leave of Court, Plaintiff filed a surreply on May 30, 2012. Surreply of AESC-NM Insurance Group of New Mexico in Opposition to the [Motion] [Doc. 34] ("Surreply").[2] Defendant has failed to meet its burden to show that there is no genuine issue of

---

[1] Also on April 11, 2012, Defendant filed Aspen's Objections to Affidavit of R. Steven Clark [Doc. 29], which is addressed *infra*.

[2] On June 1, 2012, Defendant filed Aspen's Objections to the Affidavit of Jay A. Thompson [Doc. 38]. The Court overrules the objections as moot because the Court did not consider Mr. Thompson's affidavit in deciding the

material fact and that the documents containing the arbitration clause constitute a contract between the parties. Additionally, because genuine issues of material fact exist regarding the nature of the parties' negotiations and contractual relationship, summary judgment is not warranted on claims 3, 4, 5, or 6. Therefore, the Court, being otherwise fully advised in the premises, FINDS that the Motion is not well-taken and should be DENIED.

## I.  BACKGROUND

Plaintiff is a New Mexican "self-insurance group" as defined in New Mexico's Group Self-Insurance Act at NMSA 1978, § 52-6-2(B). Amended Complaint [Doc. 9] at 2. Defendant is a British "reinsurer." Motion [Doc. 12] at 1. The parties seem to agree that they made or attempted to make an agreement whereby Defendant would provide some type of insurance, reinsurance, or excess insurance service to Plaintiff. *See* Declaration of Michael Clifton [Doc. 13-1] ("First Clifton Affidavit") at 4; Affidavit of R. Steven Clark [Doc. 22] ("Clark Affidavit") at 2. The parties also agree that two intermediaries were involved in their negotiations: Montlake Holdings ("Montlake") and BMS Group ("BMS"). *See* First Clifton Affidavit [Doc. 13-1] at 4–6; Clark Affidavit [Doc. 22] at 2–3. However, the parties disagree about the role of BMS. First Clifton Affidavit [Doc. 13-1] at 4 (BMS was Plaintiff's agent); Clark Affidavit [Doc. 22] at 3 (BMS was Defendant's agent). Most importantly, they disagree about circumstances and substance of their negotiations and about the terms of their agreement. First Clifton Affidavit [Doc. 13-1] at 4–7 (describing negotiations); Clark Affidavit [Doc. 22] at 2–3 (describing negotiations). In fact, they even dispute which documents constitute their contract(s). First Clifton Affidavit [Doc. 13-1] at 4–6 (contracts are at [Docs. 13-2 through

---

Motion. *See Ortiz v. San Miguel Cnty.*, 955 F. Supp. 1338, 1347 (D.N.M. 1996) (denying motion to strike affidavits not considered by court in ruling on motion for summary judgment).

13-7]); Clark Affidavit [Doc. 22] at 2 (contracts are at [Docs. 9-1 and 9-2]). Plaintiff has presented a set of documents that it contends constitute the agreements, [Docs. 9-1 and 9-2], but Defendant has a completely different set of documents that it contends are the agreements, [Docs. 13-2 through 13-7]. Each party challenges the meaning and legal significance of the other's documents. Declaration of Michael Clifton in Support of Reply to Aspen Insurance UK, Limited [Doc. 28-1] ("Second Clifton Affidavit") at 2 (Plaintiff's purported contracts were presented to affiant by a representative of BMS as nothing more than an administrative step required by the governing authorities in New Mexico that were not intended to replace the actual contract terms being negotiated); Clark Affidavit [Doc. 22] at 3 (Defendant's purported contracts were presented to affiant *after* catastrophic losses had already occurred and were immediately rejected by affiant).

Defendant moves the Court to compel Plaintiff to arbitrate, under D.N.M.LR-Civ. 7. In the alternative, Defendant asks the Court to dismiss counts 3 and 4 (both for bad faith denial of payment) and counts 5 and 6 (both related to the New Mexico Unfair Practices Act, NMSA 1978, § 57-12-1 through 57-12-26 ("UPA")) under Fed. R. Civ. P. 12(b)(6). Motion [Doc. 9]. In briefing the Motion, both parties submitted evidence beyond the Amended Complaint and requested that the Motion be converted to one for partial summary judgment. Response [Doc. 20] at 9; Reply [Doc. 28] at 10.

## II. MOTION TO COMPEL ARBITRATION

Courts, rather than arbitrators, determine the arbitrability of disputes. *First Options of Chicago, Inc. v. Kaplan*, 541 U.S. 938, 944 (1995); *accord Carpenters Dist. Council of Denver*

*and Vicinity v. Brady Corp.*, 513 F.2d, 1, 3 (10th Cir. 1975); *accord* NMSA 1978, § 44-7A-7(b).[3] State law governs whether contracts—and their arbitration clauses—are valid and enforceable.[4] *First Options*, 541 U.S. at 944. In New Mexico, arbitration is a "highly favored" form of dispute resolution because "[i]t promotes both judicial efficiency and conservation of resources by all parties." *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 2002 NMCA 30, ¶ 51, 131 N.M. 772, 42 P.3d 1221. The party seeking to enforce the arbitration agreement bears the burden of showing its existence. *Corum v. Roswell Senior Living, LLC*, 2010 NMCA 105, ¶¶ 3, 16, 149 N.M. 287, 248 P.3d 329, *cert. denied*, 2010 NMCERT 10, 149 N.M. 64, 243 P.3d 1146; *see DeArmond v. Halliburton Energy Servs., Inc.,*, 2003 NMCA 148, ¶ 9, 134 N.M. 630, 81 P.3d 573 (party relying on a contract has the burden to prove it is legally valid and enforceable). Moreover, every inference is drawn in favor of the party challenging the existence of the arbitration agreement. *Sisneros v. Citadel Braod Co.*, 2006 NMCA 102, ¶ 12, 140 N.M. 266, 142 P.3d 34. Therefore, "[t]he presumption in favor of arbitration disappears" when the existence of a valid arbitration agreement is disputed. *DeArmond*, 2003 NMCA 148, ¶ 8 (internal quotation marks omitted).

---

[3] Additionally, the arbitration clauses urged by Defendant themselves reserve questions "as to [their] actual formation or validity" for a court, rather than an arbitrator. Aspen's "Interests and Liabilities Contracts" ("I&Ls") [Doc. 13-5] at 14; [Doc. 13-6] at 15; [Doc. 13-7] at 14.

[4] Defendant references the Federal Arbitration Act ("FAA") in its Motion. However, some courts have determined that the FAA does not apply in the insurance context. *See Mid-Continent Cas. Co. v. Gen. Reinsurance Corp.*, No. 07-5050, 331 F.App'x 580, 581, 2009 U.S. App. LEXIS 11057, at *2 (10th Cir. May 22, 2009) (unpublished). Nevertheless, it is unnecessary to determine whether the FAA applies here because, even under the FAA, courts look to state contract law to determine whether the parties have agreed to arbitrate the subject dispute. *First Options of Chicago, Inc. v. Kaplan*, 541 U.S. 938, 944 (1995) (FAA points courts to state law to determine whether arbitration agreement exists); *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006) (Under the FAA, "courts should apply ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute.").

If a court cannot or does not make findings of fact regarding the existence of an arbitration agreement and, instead, decides its existence as a matter of law, it should apply the summary judgment standard. *DeArmond*, 2003 NMCA 148, ¶ 4. In other words, "[o]nly when there is no genuine issue of fact concerning the formation of an arbitration agreement should the court decide the existence of the agreement as a matter of law." *Id.* (internal quotation marks omitted).

For an enforceable contract in New Mexico, offer, acceptance, consideration, and mutual assent are all required. *Garcia v. Middle Rio Grande Conservancy Dist.*, 1996 NMSC 29, ¶ 9, 121 N.M. 728, 918 P.2d 7. "Acceptance must be clear, positive, and unambiguous." *DeArmond*, 2003 NMCA 148, ¶ 11 (internal quotation marks omitted). New Mexico law provides for a "contextual approach" to contract interpretation. *Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993). Thus, courts are not restricted to the four corners of the document and, instead, may consider extrinsic evidence when evaluating whether there is ambiguity in a contract. *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 508–09, 817 P.2d 238, 242−43 (1991). If there is ambiguity, that ambiguity must be resolved by the fact finder:

> An ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity. The question whether an agreement contains an ambiguity is a matter of law to be decided by the trial court. The court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear. If the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law. If the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists. At that point, if the proffered evidence of surrounding facts and circumstances is in dispute, turns on witness credibility, or is susceptible of conflicting inferences, the meaning must be resolved by the appropriate fact finder.

*Mark V*, 114 N.M. at 781, 845 P.2d at 1235 (internal citations omitted).

Here, considering the extrinsic evidence submitted by the parties, the Court finds that each of the three sets of documents on the record—AESC's "Policies," [Docs. 9-1 and 9-2], and Aspen's "Placing Slips" and "I&Ls", [Docs. 13-2 through 13-7]—is ambiguous.  The proffered evidence is susceptible to conflicting inferences, and therefore, on the record as it stands at this time, the Court is unable to determine the contours of Plaintiff and Defendant's agreement.  Certainly, there are genuine issues of fact concerning whether Plaintiff accepted or assented to the arbitration clauses, or to anything in the documents containing the arbitration clauses.  Accordingly, the Court will DENY Defendant's motion to compel arbitration.

## II. The Court converts the motion to dismiss to a motion for summary judgment.

Courts are required to convert a motion to dismiss to one for summary judgment where matters outside the pleadings are presented and considered by the court.  Fed. R. Civ. P. 12(d).  Generally, if a court converts a motion to dismiss into one for summary judgment, it notifies the parties of the conversion and allows them extra time to present all material pertinent to the motion.  *See id.*  Advanced notice of the conversion and extra time to submit materials prevents prejudice to the plaintiff.  *See Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986).  However, advanced notice of the conversion and extra time is not always necessary.  The Tenth Circuit Court of Appeals repeatedly has held that a plaintiff who submits its own evidence in response to a Rule 12(b)(6) motion is not prejudiced by the conversion of the motion. *See Lamb v. Rizzo*, 391 F.3d 1133, 1137 n.3 (10th Cir. 2004) ("Mr. Lamb does not and cannot claim that the absence of notice prejudiced him.  Mr. Lamb not only failed to object to the exhibits attached to Mr. Rizzo's motion to dismiss, but Mr. Lamb also filed his own exhibits in response." (citation

6

omitted)); *Arnold v. Air Midwest, Inc.*, 100 F.3d 857, 859 n.2 (10th Cir. 1996) ("Because Mr. Arnold submitted material beyond the pleadings in opposition to defendants' motion, he is scarcely in a position to claim unfair surprise or inequity."); *Nichols*, 796 F.2d at 364 ("Nichols cannot complain of unfair surprise since he responded with material made pertinent by Rule 56." (internal quotation marks omitted)).

In this case, the Court will convert the Motion to one for summary judgment and will consider the materials presented by the parties.  Plaintiff is not prejudiced by this action because Plaintiff presented its own evidence to support its positions.  First, Plaintiff submitted supporting evidence along with its Response.  Additionally, instead of striking Defendant's evidence, to which Plaintiff objected, the Court granted Plaintiff leave to file a surreply.  Motion of AESC-NM Insurance Group of New Mexico to Stirke Declarations or, in the Alternative, to Permit Surreply [Doc. 31]; Order Granting in Part and Denying in Part Plaintiff's Motion to Strike or, in the Alternative, Motion for Surreply [Doc. 32].  Plaintiff did file a surreply and attached further evidence to it.  Therefore, no advanced notice of conversion and no extra time to submit evidence is necessary here.

## A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the movant meets this burden, Rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993) ("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (internal quotation marks omitted)).

"A party asserting that a fact . . . is genuinely disputed must support the assertion by citing to particular parts of materials in the record, . . . ." Fed. R. Civ. P. 56(c)(1(A). It is not enough for the party opposing a properly supported motion for summary judgment to "rest upon mere allegation or denials of [its] pleadings . . . ." *Liberty Lobby*, 477 U.S. at 256; *accord Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir. 1990); *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980) ("However, once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." (internal quotation marks omitted)). Nor can a party avoid summary judgment by repeating conclusory allegations, opinions unsupported by specific facts, or speculation. *MacKenzie v. Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not

escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus*, 11 F.3d at 1539. Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 251; *Vitkuss*, 11 F.3d at 1539. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249 (citations omitted). Where a rational trier of fact, considering the record as a whole, could not find for the nonmoving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, courts should keep in mind three principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the nonmoving party, and construe all evidence in the light most favorable to the nonmoving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999); *Liberty Lobby*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Third, the court cannot decide any issues of credibility. *Liberty Lobby*, 477 U.S. at 255.

### B. Claims 3 and 4 for Bad Faith Denial of Payment

In its Amended Complaint [Doc. 9], Plaintiff alleges that it entered into two contracts with Defendant. The first was a "specific excess insurance policy," by which Defendant promised to reimburse Plaintiff for paid losses that exceeded Plaintiff's paid retention amount of $250,000 per occurrence. Amended Complaint [Doc. 9] at 2. The second was an "aggregate excess insurance policy," by which Defendant promised to reimburse Plaintiff for paid losses that exceeded Plaintiff's retention amount of "100% of Annual Accounted Premium" between December 1, 2010 and December 31, 2011. *Id.* at 3. Plaintiff further alleges that, even though it has met all of its obligations under both contracts, Defendant refuses to reimburse Plaintiff for qualifying losses. *Id.* at 3–4. Accordingly, Plaintiff has asserted claims for "bad faith denial of payment" with respect to each of the two contracts. *Id.* at 6, 7.

Defendant moves for summary judgment on both bad faith claims because, it asserts, "as a matter of law, bad faith claims cannot be asserted by an insurer against a reinsurer."[5] Motion [Doc. 13] at 12. Defendant distinguishes its relationship with Plaintiff from that of a "traditional consumer policyholder and direct insurer." [Doc. 13] at 12. Defendant cites decisions interpreting California[6] state law to conclude that "as a matter of law, a cause of action sounding in bad faith may not be asserted by a cedent against its reinsurer." [Doc. 13] at 13 (citing

---

[5] Defendant insists that in its relationship with Plaintiff, Defendant is a "reinsurer," while Plaintiff characterizes Defendant as an "excess insurer." It is unclear whether Defendant sees any difference in the meanings of these terms. Plaintiff does not and asserts that they are one and the same. Response [Doc. 20] at 10–11.

[6] Defendant also cites cases interpreting New York and Ohio state laws. Defendant did not indicate pin cites for either case, so the Court must guess which part of the decision Defendant intended to reference. Nevertheless, neither case is on point. For example, *Pasqualetti v. Kia Motors Amer., Inc.*, 663 F. Supp. 2d 586, 603 (N.D. Ohio), addresses the breach of the implied duty of good faith and fair dealing as a *contract* claim and distinguishes it from tortious interference with contractual relations, which is a *tort* claim. *Bernstein v. Centaur Ins. Co.*, 606 F. Supp. 98, 100–01 (S.D.N.Y. 1984), holds that a claim for punitive damages is not an independent cause of action, and punitive damages are not allowable for breach of contract.

*Stonewall Ins. Co. v. Argonaut Ins. Co.*, 75 F. Supp. 2d 893, (N.D.Ill. 1999) and *Cal. Joint Powers Ins. Auth. v. Munich Reinsurance Am., Inc.*, No. CV 08-956 DSF (RZx), 2008 U.S. Dist. LEXIS 56654, at *5–13 (C.D. Cal. April 21, 2008) (unpublished)). These decisions are based on a California state-law policy that the consumer protection provided by bad faith law is unnecessary where the disputing parties had equal bargaining power and where remedies in contract are available. In the case at bar, because Plaintiff is not a traditional consumer policyholder, and because Plaintiff can (and is) suing Defendant for breach of contract, Defendant argues that Plaintiff cannot sue Defendant for bad faith denial of payment.

Plaintiff counters that, under New Mexico law, it may sue Defendant for bad faith because New Mexico does not impose the same restrictions on such claims as California. The Court agrees. Defendant has cited no New Mexico authority limiting insurance bad faith claims to parties with unequal bargaining power or to situations where no contract remedy[7] is available, nor does the Court find any. To the contrary, claims of bad faith between insurance companies have been adjudicated under New Mexico law on numerous occasions. *See Ambassador Ins. Co. v. St. Paul Fire*, 753 F.2d 824 (10th Cir. 1985) (in answering questions certified to it by the Tenth Circuit Court of Appeals, the New Mexico Supreme Court endorses certain jury instructions on bad faith claim brought between insurance companies); *Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co.*, 110 N.M. 741, 799 P.2d 1113 (1990) (adjudicating insurance bad faith claim between insurance companies); *Design Professionals Ins. Cos., Inc. v. St. Paul Fire & Marine Ins. Co.*, 1997 NMCA 49, 123 N.M. 398, 940 P.2d 1193 (1997) (bad faith and other

---

[7] New Mexico views insurance bad faith claims as rooted in both contract and tort law. *Ambassador Ins. Co. v. St. Paul Fire*, 753 F.2d 824, 828 (10th Cir. 1985). In fact, a binding contract is a prerequisite for an insurance bad faith claim in New Mexico. *Charter Servs. v. Principal Mut. Life Ins. Co.*, 117, NM 82, 88, 868 P.2d 1307, 1313 (1994).

claims litigated between primary and excess insurers); *see generally Yumukoglu v. Provident Life & Accident Ins. Co.*, No. 01-2200, 36 F.App'x. 378, 381, 2002 U.S. App. LEXIS 10554, at *6–8 (10th Cir. May 30, 2002) (unpublished) (outlining standard for insurance bad faith claim in New Mexico with no mention of unequal bargaining power or lack of contract remedy).

The Court finds that New Mexico law allows bad faith claims between insurance carriers without a showing of disparity in bargaining power or the absence of available contract remedies. Moreover, genuine issues of material exist with respect to the nature of the relationship between Plaintiff and Defendant. *See* Background section, *supra*. Therefore, summary judgment is denied on Plaintiff's bad faith claims.

### C. Claims 5 and 6 for Violation of the New Mexico UPA

The parties agree on the elements of a UPA claim. *See* Motion [Doc. 13] at 14; Response [Doc. 20] at 13. The UPA is violated when one party makes "[1] a false or misleading oral or written statement, visual description or other representation of any kind [2] knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person [3] in the regular course of the person's trade or commerce, [4] that may, tends to or does deceive or mislead any person . . . ." NMSA 1978, § 57-12-2(D).

Defendant asserts that Plaintiff cannot sustain a UPA claim against it because Defendant never made any statements to Plaintiff. Motion [Doc. 13] at 14. Plaintiff responds that Defendant's statements were made in the form of the insurance contracts attached to Plaintiff's Amended Complaint. Response [Doc. 20] at 13. The Court finds that genuine issues of material fact exist with respect to whether any statements were made by Defendant to Plaintiff. *See* Background section, *supra* (parties disagree about the role of their intermediary, BMS; parties

disagree about the circumstances of their negotiations and the terms of their agreement; parties dispute which documents constitute their contract(s); parties challenge the meaning and legal significance of the documents proffered by the other as the contract(s)).  Therefore, summary judgment is not warranted and will be denied.

### IV.   The Court overrules Defendant's objections to the Clark Affidavit.

On April 11, 2012, Defendant filed Aspen's Objections to Affidavit of R. Steven Clark [Doc. 29].  Defendant objects to paragraphs 7–14 as hearsay, and to paragraphs 7, 9, 12, and 14 as being not based on the affiant's personal knowledge.  *Id.*

> At the summary judgment stage, evidence need not be submitted in a form that would be admissible at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  "Parties may, for example, submit affidavits in support of summary judgment, despite the fact that affidavits are often inadmissible at trial as hearsay, on the theory that the evidence may ultimately be presented at trial in an admissible form."  *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).  Nonetheless, "the content or substance of the evidence must be admissible."  *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995).  "Thus, for example, at summary judgment courts should disregard inadmissible hearsay statements contained in affidavits as those statements could not be presented at trial in any form."  *Argo*, 452 F.3d at 1199.

*Aludo v. Denver Area Council*, No. 06-cv-02257-LTB-MJW, 2008 U.S. Dist. LEXIS 51797, *3-5 (D. Colo. July 8, 2008) (unpublished).

In deciding the motion for summary judgment, the Court relied only on certain portions of the Clark Affidavit.  For example, the Court relied on paragraph 10 to the extent that Mr. Clark asserted that [Docs. 9-1 and 9-2] constitute the contracts between the parties, which are not hearsay.  *See Cagle v. James St. Group*, No. 09-6262, 400 F.App'x 348, 356, 2010 U.S. App. LEXIS 22359, at *18–19 (10th Cir. Oct. 28, 2010) (unpublished) (citing *Schindler v.*

*Seiler,* 474 F.3d 1008, 1010–11 (7th Cir. 2007)); *Mueller v. Abdnor,* 972 F.2d 931, 937 (8th Cir. 1992) (contracts are not excludable as hearsay because they do not constitute "statements" offered for their truth but, instead, constitute acts of legal significance).  The Court relied on paragraphs 13 and 14 only to the extent that Mr. Clark averred that he received the documents that Defendant claims to be the contracts after the catastrophic losses had already occurred and to the extent that he averred that he rejected them immediately on behalf of Plaintiff.  Neither of these grounds is hearsay, and both are based on the affiant's personal knowledge.  Additionally, the Court relied on the portions of paragraphs 6–14 that describe the affiant's negotiations with Defendant via BMS.  These descriptions, including Mr. Clark's conclusion that BMS was Defendant's agent, are not hearsay and are based on his personal knowledge.  Otherwise, the Court did not rely on the Clark Affidavit [Doc. 22] in ruling on the Motion.  Therefore, Defendant's objections are OVERRULED.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Motion of Aspen Insurance UK Limited to Compel Arbitration or, in the Alternative, to Dismiss AESC's Third and Fourth Causes of Action (Each Sounding in Bad Faith), and AESC's Fifth and Sixth Causes of Action (Each Alleging Violations of the Unfair Trade Practices Act) [Doc. 12] is **DENIED**

**IT IS FURTHER ORDERED** that Defendant shall respond to the Complaint within 21 days of the date of this order or request leave for an extension of time, and the case will proceed with discovery.

**IT IS FURTHER ORDERED** that Aspen's Objections to Affidavit of R. Steven Clark [Doc. 29] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Aspen's Objections to the Affidavit of Jay A. Thompson [Doc. 38] are **OVERRULED as moot**.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR
United States Magistrate Judge
Presiding by Consent**